# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kris Alan Hahn,

        Plaintiff,

v.

Thomas E. Bauer, Mark S. Wernick,
J. Marshall, Peter Sichko, Michael O.
Freeman, City of Minneapolis, and
County of Hennepin,

        Defendants.

Civ. No. 09-2220 (JNE/JJK)

**REPORT AND
RECOMMENDATION**

---

Kris Alan Hahn, 223 14th Ave. NE, Minneapolis, MN 55413-1119, *pro se*.

Richard J. Thomas, Esq., and Corinne Ivanca, Esq., Burke & Thomas, PLLP,
counsel for Defendant Thomas E. Bauer.

John S. Garry, Esq., Minnesota Attorney General's Officer, counsel for
Defendant Mark S. Wernick.

Toni A. Beitz, Esq., Hennepin County Attorney's Officer, counsel for Defendants
J. Marshall, Peter Sichko, Michael O. Freeman, and County of Hennepin.

James Anthony Moore, Esq., Minneapolis City Attorney's Office, counsel for
Defendant City of Minneapolis.

---

JEFFREY J. KEYES, United States Magistrate Judge

      This matter is before this Court on Defendant the City of Minneapolis's

("the City") Motion to Dismiss Pursuant to Rule 12(b)(4)(5) and (6) (Doc. No. 4),

Defendant Thomas E. Bauer's Motion to Dismiss (Doc. No. 9), Defendants

Jeffrey Marshal, Peter Sichko, Michael O. Freeman, and the County of

Hennepin's (collectively "Hennepin County Defendants") Motion to Dismiss (Doc. No. 15), and Defendant Mark S. Wernick's Motion to Dismiss (Doc. No. 32). These motions have been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1.[1] For the reasons stated below, this Court recommends that Defendants' motions be granted.

## BACKGROUND

In 2007, Plaintiff was charged in state court in the Fourth Judicial District of Minnesota with the crimes of criminal sexual conduct in the first degree (File No. 27-CR-07-109896), and felony possession of a firearm (File No. 27-CR-07-109897). Throughout the next two years, a variety of hearings were held in state court relating to Plaintiff's cases. After Plaintiff declined to accept a plea agreement made by the State, a jury trial was held on November 13 – 19, 2009, on Plaintiff's criminal-sexual-conduct case, and a guilty verdict was returned on November 19, 2009. Also, on April 29, 2008, Plaintiff pleaded guilty in federal court to production of child pornography, and on January 27, 2009, he was

---

[1]     Also pending before the Court are Plaintiff's Motion to Amend and/or Supplement Pleadings (Doc. No. 36), and Plaintiff's Motion for Order to Take Judicial Notice (Doc. No. 49). In a separate Order entered contemporaneously with this Report and Recommendation, the Court has ruled that Plaintiff's motions must be denied. The Court notes that even if Plaintiff's Complaint were amended and supplemented in the manner suggested by Plaintiff's motion, it still would not cure the deficiencies with Plaintiff's claims asserted against the originally named Defendants.

sentenced to 210 months in prison for that charge. Plaintiff is currently incarcerated at the Hennepin County Adult Detention Center awaiting sentencing in his state criminal-sexual-conduct case, which is scheduled for January 28, 2010. The allegations in Plaintiff's Complaint arise out of his custody and hearings in the state-court proceedings.

On February 25, 2009, Plaintiff attended a plea hearing with his private defense counsel, Thomas E. Bauer,[2] before Hennepin County District Court Judge Mark S. Wernick. As Plaintiff walked by to leave the courtroom after the hearing, the courtroom bailiff, Hennepin County Sheriff's Office Court Security Deputy J.[3] Marshall, allegedly stated to Plaintiff's transporting officer, "Get him out of here before something happens to him. He's a bit too happy, f**ing pervert." (Doc. No. 1, Compl. ¶ 14.)

On April 15, 2009, prior to a scheduled court appearance before Judge Wernick, Plaintiff met with Bauer, his attorney. Plaintiff alleges that during this meeting, Bauer went through the plea agreement offered by the prosecutor, explained the risks involved in not taking the plea, and stated that there would be no risk in taking the plea. (Compl. ¶ 17-18.) Plaintiff told Bauer that he would not

---

[2]     Bauer is one of Plaintiff's former attorneys who represented him in his federal criminal-production-of-child-pornography case and in his state criminal-sexual-conduct case.

[3]     Plaintiff refers to Deputy Marshall throughout his Complaint as J. Marshall. Deputy Marshall's first name is Jeffrey.

take the plea.  (Compl. ¶ 17.)  Plaintiff alleges that Bauer then asked him what his problem was, and that Plaintiff responded stating, "I don't want to admit to something I didn't do."  (Compl. ¶ 19.)  Bauer then allegedly said, "You don't have to with the *nolo contendere*."  (Compl. ¶ 20.)  After further discussion about certain evidence in Plaintiff's case that had not been suppressed, Plaintiff mentioned to Bauer that Plaintiff had filed a motion to dismiss.  (Compl. ¶ 30.)  Bauer asked Plaintiff what grounds the motion was based on, and Plaintiff told Bauer that he would have to read the motion.[4]  Bauer then asked Plaintiff again if he was going to take the plea and Plaintiff told him "No."  (Compl. ¶ 32.)  Plaintiff alleges that Bauer said, "You can take this to trial if you want.  It's your right, but you will lose and the judge will give you 24 years consecutive."  (Compl. ¶ 33.)  Plaintiff was then transported to a holding area.  (Compl. ¶ 34.)

Plaintiff claims that as the transporting deputy came through the door to the holding area, Deputy Marshall held the door open and instructed the transporting deputy to take Plaintiff separately.  (Compl. ¶ 35.)  As Plaintiff and the transporting deputy walked down the hall to the courtroom, Plaintiff alleges that Deputy Marshall "looked at [Plaintiff] angrily and said quietly but plainly, 'Kill you,'" and then followed Plaintiff and the transporting deputy down the hallway to the courtroom.  (Compl. ¶ 36.)

---

[4]     The motion was based on Bauer's alleged "ineffective assistance of counsel."  (Compl. Ex. A.)

Plaintiff alleges that during the April 15, 2009 hearing, Judge Wernick misstated the law regarding Plaintiff's entitlement to counsel by telling Plaintiff that if he did not want Bauer trying his case at the upcoming trial, then Plaintiff would be trying it himself. (Compl. ¶¶ 10-11.) Specifically, Plaintiff alleges that Judge Wernick stated the following:

> Well, Mr. Hahn's opinion about your competence really doesn't concern me, because I know you are competent, and I know you are going to come to trial prepared.
>
> Mr. Hahn, you have the right to an attorney of your choice. So if you are going to retain a different lawyer, I need to know that, and I need to know if that lawyer is going to be available July 27th. If you continue to play around with me and not answer my questions, then I can't help you, sir. If you don't want Mr. Bauer to try your case on July 27th, you will be trying it yourself. Tell me, are you going to hire another lawyer or not? Let's assume I'm not going to dismiss your case. I don't know what grounds—I have read the complaint. There is probable cause. I don't know what grounds you're alleging, so let's assume I'm not going to dismiss your case. Are you going with Mr. Bauer? Are you going to hire another lawyer? Do you want to on your own?

(Compl. ¶ 10 (citing the 4/15/09 hearing transcript).)[5]

After the hearing, the transporting deputy instructed Plaintiff to get up and proceed towards the exit. (Compl. ¶ 40.) Plaintiff alleges that as he walked down the front of the jury box inside the railing, Deputy Marshall, who was on the other side of the railing, quietly but plainly said, "I'd kill you." (*Id.*) As Plaintiff and

---

[5]     At a subsequent hearing on April 29, 2009, before Judge Jane Ranum, Plaintiff applied for the services of a Public Defender and the Judge appointed a Hennepin County Public Defender to represent him. (Doc. No. 30, Aff. of Toni A. Beitz in Supp. of County Defs.' Mot. for Dismissal ("Beitz Aff.") ¶ 6, Ex. B at 2.)

the transporting deputy were leaving in the elevator, Plaintiff allegedly told the transporting deputy that Deputy Marshall had threatened to kill him. (Compl. ¶ 41.) Plaintiff asserts that he does not know the names of any of the officers who witnessed Deputy Marshall's threats. (Compl. ¶ 43.)

Before a subsequent hearing, Plaintiff asserts that Deputy Marshall searched him and removed a Bible that Plaintiff had in his sock. Plaintiff asserts that Deputy Marshall did not take the Bible, but that Deputy Marshall told Plaintiff that "if [he] mention[ed] his name again to anybody that he would have my ass." (Compl. ¶ 59.) Plaintiff also alleges that Deputy Marshall tried to provoke Plaintiff by saying, "Anything Hahn, just give me a reason!" (*Id.*)

Plaintiff asserts that he has "complained repeatedly of the criminal conduct of J. Marshall." (Compl. 1-2.) Plaintiff also alleges that his brother complained to the "proper authorities" about Deputy Marshall's threats. (Compl. ¶ 44.)

On July 1, 2009, Defendant Lieutenant Sichko met with Plaintiff to discuss Plaintiff's complaints. (*See* Compl. ¶ 45.) Plaintiff states that in that interview, Lt. Sichko told him that he investigated the death-threat allegations at the request of the Hennepin County Prosecutor's Office. (*Id.*) Lt. Sichko allegedly told Plaintiff that after interviewing the deputies involved, he had determined that no crime was committed and that it was a case of "He said; she said," and that therefore, he did not officially submit any charges. (Compl. ¶ 46.) Lt. Sichko also allegedly told Plaintiff that he had spoken with Plaintiff's attorney, Mr. Bauer, and that Bauer told Lt. Sichko that Plaintiff's "credibility is not good," and that Plaintiff

is "not a truthful person."  (Compl. ¶ 47.)  In response, Plaintiff told Lt. Sichko that

Bauer was saying these things "only because of the ineffective counsel charges

that [Plaintiff had] leveled against him in court[.]"  (Compl. ¶ 48.)  Plaintiff alleges

that Lt. Sichko then just shrugged his shoulders.  (*Id.*)

Plaintiff then asked Lt. Sichko why an alleged witness named Mickey

Simmons had not been interviewed; Lt. Sichko responded that he had not been

informed of any witness by that name.  (Compl. ¶ 52.)  Plaintiff alleges that he

then told Lt. Sichko that he had "informed Sgt. Saunders and Sgt. Miller about

Mickey Simmons in a meeting with Sgt. Saunders and Sgt. Miller on May 29 in a

holding cell on the 11th floor of the Government Center[,]" and that at that

meeting he had asked Sgt. Saunders why he had not interviewed Mickey

Simmons.  (Compl. ¶ 53.)  Plaintiff alleges that Sgt. Saunders responded that

"[he] did not see the need to, as [he] had statements from all the deputies

involved."  (*Id.*)  Plaintiff alleges that Lt. Sichko then stated that he would "track

Simmons down and talk to him and if it added anything to his investigation

results, he would act appropriately."  (Compl. ¶ 54.)

Later in the conversation, Lt. Sichko also allegedly stated again that he

would not ask a prosecutor to bring charges and that no prosecutor would charge

the case either.  (Compl. ¶ 61, 63.)  Plaintiff then told Lt. Sichko that he would

like to press formal charges.  Plaintiff alleges that Lt. Sichko responded by saying

that "[t]he DA's office already gave this to me to investigate.  I've filed my report.

They will not prosecute.  Your charges have already been addressed." (Compl.
¶ 65.)

Plaintiff alleges seven causes of action in his Complaint.  The first cause of
action ("Count I") is for "Denial of Equal Protection of the Laws, Eighth
Amendment Violation(s), Assault Against Defendant J. Marshall," and is based
on Defendant Marshall's alleged death threats.  (Compl. ¶¶ 77-80.)  The second
cause of action ("Count II") is for "Slander Against Defendant Thomas E. Bauer,"
and is based on Bauer's alleged statements to Lt. Sichko that Plaintiff was not
truthful.  (Compl. ¶¶ 81-83.)  The third cause of action ("Count III") is entitled
"Denial of Meaningful Access to the Courts Against Defendant County of
Hennepin," and is based on Plaintiff's alleged denial of access to a law library.
(Compl. ¶¶ 84-85.)  The fourth cause of action ("Count IV") is entitled "Denial of
the Assistance of Counsel Against Defendant Mark S. Wernick," and is based on
Judge Wernick's alleged denial of assistance of counsel to Plaintiff.  (Compl.
¶¶ 86-89.)  The fifth cause of action ("Count V") is entitled "Actual Fraud Bad
Faith Disgorgement of Fees Against Thomas E. Bauer," which appears to be a
disgorgement claim based on Bauer's alleged fraud.  (Compl. ¶¶ 90-92.)  The
sixth cause of action ("Count VI") is for "Assault and Intentional Infliction of
Emotional Distress Against Defendant J. Marshall," and is based on the alleged
death threats made by Marshall.  (Compl. ¶¶ 93-97.)  And the seventh cause of
action ("Count VII") is entitled "Failure to Train Against City of Minneapolis and

County of Hennepin," and is also apparently based on the alleged death threats made by Marshall.  (Compl. ¶¶ 98-192.)

**DISCUSSION**

## I.    Standard of Review

A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 545. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b). *Westcott*, 901 F.2d at 1488. The pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in plaintiff's complaint are taken as true for purposes of the motion. *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994).

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). However, even a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions"); *Frey v. City of Herculaneum*,

44 F.3d 667, 671 (8th Cir. 1995) ("[a]t the very least . . . the complaint must contain *facts* which state a claim as a matter of law and *must not be conclusory*") (emphasis added).

"[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court is not required to "divine the litigant's intent and create claims that are not clearly raised," nor is the court required to "read or construct an argument into a civil-rights pleading." *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

In addressing a motion to dismiss based on Rule 12(b)(4) or 12(b)(5), a court necessarily must review affidavits outside the pleadings. 5B Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2004); *Personalized Brokerage Servs., LLC v. Lucius*, No. 05-1663, 2006 WL 2975308, at *1 (D. Minn. Oct. 16, 2006); *Devin v. Schwan's Home Servs., Inc.*, No. 04-4555, 2005 WL 1323919, at *2 (D. Minn. May 20, 2005). "Reviewing such affidavits does not revert the motion to a motion for summary judgment." *Devin*, 2005 WL 1323919, at *2.

"In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party[.]" *Murphy Bros., Inc. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999). Further, "[i]f a defendant is improperly served, a federal court lacks jurisdiction over the

defendant." *Printed Media Serv., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir.1993). "[A] court may not proceed at all in a case unless it has jurisdiction." *Crawford v. F. Hoffman-LaRoche, Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001). On a motion to dismiss brought under Fed. R. Civ. P. 12(b)(4), insufficiency of process, or 12(b)(5), insufficiency of service of process, the plaintiff must establish prima facie evidence that there was sufficient process and service of process. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas*, 51 F.3d 1383, 1387 (8th Cir.1995).

## II. Defendant the City's Motion to Dismiss

The City of Minneapolis seeks an order of dismissal on the grounds that (1) Plaintiff failed to serve the Complaint with the Summons; (2) Plaintiff improperly served the Summons on the City; and (3) the Complaint fails to state any claim upon which relief can be granted against the City. Plaintiff did not file a response in opposition to the City's motion, and in his proposed First Amended Complaint, he removed the City as a listed party. Therefore, the Court presumes that Plaintiff does not object to granting the City's motion.

### Service Deficiencies

Under Federal Rule of Civil Procedure 4(j)(2), service on a state, a municipal corporation, or any other state-created governmental organization  is effected in two ways. First, a copy of the summons and complaint can be delivered to the chief executive officer of the state or governmental organization. Fed. R. Civ. P. 4(j)(2). Under Rule 4(j)(2), "delivery" means personal service on

the chief executive officer and does not allow service by mail. *See Cambridge Mut. Fire Ins. Co. v. City of Claxton, Ga.*, 720 F.2d 1230, 1232 (11th Cir. 1983) (discussing Rule 4(d)(6), predecessor to the current Rule 4(j)(2), and stating that "when a municipal corporation is served, service must be made personally"). Second, such a defendant can be served in the manner prescribed by state law. Fed. R. Civ. P. 4(j)(2). Under Minnesota law, service on a city is effected by serving a copy of the summons and complaint on the City Clerk. Minn. R. Civ. P. 4.03(e)(2). Service under Minnesota law may be made by mail and requires mailing a copy of the summons and complaint to the person to be served, together with two copies of a notice and acknowledgment and a return envelope, postage prepaid, addressed to sender. Minn. R. Civ. P. 4.05. However, if acknowledgment of service is not received by the sender within the time defendant is required by the rules to serve an answer, then service is improper. *Id.*

Here, Plaintiff has not provided prima facie evidence that there was sufficient process and service of process with regard to the City. Instead, the record reflects that Plaintiff did not serve the Summons on the Mayor (the City's chief executive officer), nor did the Plaintiff serve the Summons and Complaint on the City Clerk. Instead, the Office of the Minneapolis City Attorney received only a copy of the Summons via United States Mail, and the mail was specifically directed to the City of Minneapolis, in care of Susan L. Segal, City Attorney of Minneapolis. (Doc. No. 6, Aff. of James A. Moore ¶ 2.) Further, there is no

indication that Plaintiff met the requirements of Minn. R. Civ. P. 4.05 for service

by mail.  Therefore, dismissal is warranted because Plaintiff did not satisfy the

service requirements of Rule 4(j)(2).

### Failure to State a Claim

Even if the District Court determines that Plaintiff's claim asserted against

the City should not be dismissed on the service-deficiency grounds, this Court

concludes that Plaintiff's claim should be dismissed for failure to state a claim.

The City points out that Plaintiff's Complaint only makes passing reference to the

City, and that Plaintiff does not allege that any of the individual Defendants are

employed by the City.  In paragraph 8, the City is identified as a local government

entity represented by Susan L. Segal.  And the seventh cause of action purports

to be "against the City of Minneapolis and County of Hennepin."  (Compl. 23.)

Thereafter, Plaintiff only alleges that "[t]he repeated violations of Minn. Stat.

§ 609.713, subd. 1 countenanced by Defendants City of Minneapolis and County

of Hennepin should make this self evident."  (Compl. ¶ 102.)

With these being the only allegations made against the City, this Court

concludes that the Complaint fails to state a claim for which relief can be granted

against the City, and recommends that any claims asserted against the City be

dismissed.[6]

---

[6]     Moreover, Plaintiff's proposed First Amended Complaint that accompanies
his Motion to Amend and/or Supplement Pleadings has dropped the City as a
named Defendant and all references to the City have been removed.  (*See* Doc.

(Footnote Continued on Following Page)

### III.    Defendant Bauer's Motion to Dismiss

In Bauer's papers supporting his motion to dismiss, he seeks an order of dismissal on the grounds that (1) he was not properly served, and (2) the Court lacks subject-matter jurisdiction over the state-law claims of slander and fraud that are asserted against him.  Later, in his Opposition to Plaintiff's Motion to Amend and/or Supplement Pleadings (Doc. No. 46), Bauer acknowledges that since his earlier filings he has subsequently been served, and therefore it appears that he has abandoned any objection based on service deficiencies.  Thus, this Court will not address Bauer's arguments relating to service here.  However, Bauer still maintains that this Court lacks subject-matter jurisdiction over the claims asserted against him.

### Subject-Matter Jurisdiction

When a federal court has original jurisdiction over part of an action, a federal court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"  28 U.S.C. § 1367(a).  "Claims within the action are part of the same case or controversy if they derive from a common nucleus of operative fact."  *One Point Solutions, LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (quotations omitted).  Claims derive from a common nucleus

(Footnote Continued from Previous Page)
No. 36, Attach. 1.)  Therefore, it appears that Plaintiff has abandoned any claims against the City.

of operative fact if they "are such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Id.*

Plaintiff asserts claims against Bauer for slander and fraud (Counts II and V). Bauer concedes that this Court does have jurisdiction over the federal law claims asserted against other Defendants in this case. (Doc. No. 11, Def. Thomas E. Bauer's Mem. of Law in Supp. of Mot. to Dismiss ("Bauer's Mem.") 7.) However, Bauer asserts that because slander and fraud are state-law claims that do not derive from a common nucleus of operative fact with the federal claims, the state-law claims should be dismissed for lack of subject-matter jurisdiction.

This Court concludes that even if the Complaint does state an actionable claim for slander and/or fraud against Bauer, those claims do not belong in federal court, due to lack of subject-matter jurisdiction. There is no original federal subject-matter jurisdiction over Plaintiff's possible slander and/or fraud claims against Bauer because these claims are not based on federal law or the Constitution (*see* 28 U.S.C. § 1331), and there is no diversity of citizenship in this case (*see* 28 U.S.C. § 1332). If Plaintiff had an actionable federal claim, which this Court concludes he does not, then a state common-law claim could perhaps be entertained under the federal supplemental jurisdiction statute—28 U.S.C. § 1367. However, the absence of an actionable federal claim effectively precludes the Court from exercising supplemental jurisdiction over any possible state-law claim. *See Stokes v. Lokken*, 644 F.2d 779, 785 (8th Cir. 1981) ("[W]hen federal claims are dismissed before trial, the normal practice is to

dismiss pendent [state law] claims without prejudice[.]"); *Johnson v. City of Shorewood, Minn.*, 360 F.3d 810, 819 (8th Cir. 2004) ("The Supreme Court has noted that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Thomas v. Dickel*, 213 F.3d 1023, 1026 (8th Cir. 2000) ("[F]ederal courts should exercise judicial restraint and avoid state law issues wherever possible.") (quotations omitted).  Therefore, the Court recommends dismissing the claims asserted against Bauer in Counts II and V without prejudice.

## IV.	Hennepin County Defendants' Motion to Dismiss

The Hennepin County Defendants (i.e., Jeffrey Marshal, Peter Sichko, Michael O. Freeman, and the County of Hennepin) seek an order of dismissal on the grounds that (1) there were deficiencies in process and service of process;[7] (2) the Complaint fails to state a claim against them; and (3) they are entitled to immunity.

To successfully plead a § 1983 civil rights cause of action, as Plaintiff is apparently attempting to do here, a complainant must allege a set of historical

---

[7]	The Hennepin County Defendants do not explain the basis for their argument that there were deficiencies in process or service of process in their memorandum.  Therefore, the Court does not address their argument here.

facts, which, if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Furthermore, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *Speed v. Ramsey County*, 954 F. Supp. 1392, 1397 (D. Minn. 1997) (same). In other words, civil-rights claimants must plead facts showing each defendant's *personal* involvement in alleged constitutional wrongdoing. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (stating that liability in a civil-rights action "requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution). In sum, when a plaintiff seeks relief under § 1983, his complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, while acting under color of state law, which purportedly violated the plaintiff's federal constitutional rights.

### A. Defendant Michael O. Freeman

Plaintiff has failed to plead an actionable § 1983 claim against Defendant Michael O. Freeman because his Complaint does not describe any act or omission by Freeman that violated Plaintiff's federal constitutional rights. Plaintiff does not name Freeman in any of the language describing his seven causes of action, and the only reference to Freeman anywhere in the Complaint is in paragraphs seven and nine, where Plaintiff states that Freeman is the Hennepin

18

County Attorney, states his business address, and that he represents the County of Hennepin in civil lawsuits.

The Complaint does not describe anything at all that Freeman did or failed to do. Indeed, there is nothing to suggest that Freeman knew anything about Plaintiff's allegations against the other Defendants, or that Freeman had ever heard of Plaintiff before the commencement of the present lawsuit. In any event, the Complaint certainly does not allege any specific facts showing that Freeman personally violated Plaintiff's federal constitutional rights (or violated any other statutory or common-law right). Thus, this Court concludes that Plaintiff has no viable cause of action under 42 U.S.C. § 1983 (or otherwise) against Freeman and recommends that Freeman be dismissed from this action.

## B. Defendant Lt. Peter Sichko

In the Complaint, Plaintiff states that "Defendant Peter Sichko is a Lieutenant with the Hennepin County Sheriff's Office," and states his business address. (Compl. ¶ 6.) Thereafter, Plaintiff describes an interview that Lt. Sichko had with Plaintiff on July 1, 2009. (Compl. ¶¶ 45-76.) Plaintiff does not specifically name Lt. Sichko in any of the language describing his seven causes of action. However, in Count I, Plaintiff does state the following:

> Plaintiff Hahn is just as entitled as any other citizen of Minnesota to have his complaints of criminal misconduct of Deputy J. Marshall to be *investigated* as anyone else, and that investigation should be in *good faith*.

(Compl. ¶ 80 (emphasis in original).)  Here, it appears that Plaintiff is implying that the Hennepin County Sheriff's Office and/or Lt. Sichko failed to conduct a "good faith" investigation and thus violated Plaintiff's right to equal protection. Plaintiff likely takes issue specifically with the fact that Lt. Sichko concluded that no prosecutable crime was committed by Deputy Marshall and that Lt. Sichko decided not to ask for charges to be brought against Deputy Marshall.

"[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767 n.13 (2005) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also Newman v. Favor*, Civ. No. 04-2728 (JNE/RLE), 2006 WL 2255433, at *2 (D. Minn. Aug. 7, 2006) (holding that plaintiff lacked standing to complain about refusal to prosecute another); *Fearing v. Lake St. Croix Villas Homeowner's Ass'n*, Civ. No. 06-456 (JNE/JJG), 2006 WL 3231970, at *13 (D. Minn. Nov. 8, 2006) (same).  Therefore, Plaintiff lacks standing to complain about Lt. Sichko's refusal to prosecute Deputy Marshal.

Plaintiff's complaint that the Hennepin County Sheriff's Office and/or Lt. Sichko failed to conduct a "good faith" investigation and thus violated Plaintiff's right to equal protection also fails.  To assert a viable equal-protection claim, Plaintiff must make two showings: (1) that he was treated differently from others who were similarly situated to him; and (2) that the government acted with discriminatory purpose.  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *McClesky v. Kemp*, 481 U.S. 279, 292 (1987).  Here, Plaintiff has alleged no facts that would

support either of these elements.  Therefore, this Court recommends dismissal of Plaintiff's claims against Lt. Sichko.

### C. Defendant J. Marshall

#### i. Count I

In Count I, Plaintiff alleges that he has a right to be free from terroristic threats from law enforcement personnel, and quotes Minn. Stat. § 609.713 (entitled Terroristic Threats), and *Irving v. Dormire*, 519 F.3d 441, 448, 449 (8th Cir. 2008), a case brought by an inmate under 42 U.S.C. § 1983 for, among other things, violation of the Eighth Amendment's proscription against cruel and unusual punishment.  This Court addresses each alleged basis in turn.

#### (a) Minn. Stat. § 609.713

Minn. Stat. § 609.713, a statute within the Minnesota Criminal Code, makes it a crime to threaten to commit a crime of violence with intent to terrorize. Under Minnesota law, a criminal statute does not give rise to a private cause of action, unless the statute clearly expresses or implies otherwise.  *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (1990).  Minn. Stat. § 609.713 does not clearly express or imply that it gives rise to a private cause of action.  Thus, Plaintiff has no private cause of action against Deputy Marshall based on this statute. Further, violation of a state law does not imply a cognizable claim under the federal Constitution or 42 U.S.C. § 1983.  *Collins v. Bellinghausen*, 153 F.3d 591, 596 (8th Cir. 1998).  This Court concludes that any claim asserted by Plaintiff under Minn. Stat. § 609.713 fails as a matter of law and should be dismissed.

### (b)    Constitutional Claim

Plaintiff titles his first cause of action "Denial of Equal Protection of the Laws, Eighth Amendment Violation(s), Assault Against Defendant J. Marshall." (Compl. 16.)  Presumably, Plaintiff is asserting that Deputy Marshall has violated Plaintiff's Eighth and Fourteenth Amendment rights based on the alleged death threats that Deputy Marshall made to Plaintiff.  However, as a matter of law, Plaintiff cannot establish that his constitutional rights have been violated because name-calling and verbal threats, without more, are insufficient to comprise a § 1983 claim.  *See, e.g., Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) ("Verbal abuse is normally not a constitutional violation."); *King v. Olmsted County*, 117 F.3d 1065, 1067-68 (8th Cir. 1997) (stating that verbal threats generally do not give rise to a § 1983 claim, and concluding that although the alleged threats were "seemingly inappropriate," they did not rise to the level of a constitutional violation); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983."); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim."); *Burton v. Livingston*, 791 F.2d 97, 99 (8th Cir. 1986) ("[I]n the usual case mere words, without more, do not invade a federally protected right.").

Here, Plaintiff has not alleged any conduct by Deputy Marshall that would support a credible threat against Plaintiff's life.  Although Plaintiff alleges that when making one of the statements to Plaintiff, Deputy Marshall looked at him

"angrily" and that he made the alleged death threats "quietly," Plaintiff has not alleged that he was physically assaulted by Deputy Marshall or that Deputy Marshall raised his fist, displayed his firearm, or made any type of physical gesture toward him when he made the alleged verbal threats. Plaintiff does reference that during a separate incident, Marshall pushed him against the wall and "told [him] the rules" when he discovered that Plaintiff had hidden a Bible in his sock,[8] but Plaintiff provides no specific, credible, factual allegation that Deputy Marshall physically assaulted or injured Plaintiff in any way that would support that Deputy Marshall was making a credible threat against Plaintiff's life. *See Hopson*, 961 F.2d at 1378-79 (holding that the officer's conduct did not rise to the level of a "brutal" and "wanton act of cruelty" when there was no allegation that plaintiff was physically assaulted by the officer or that the officer raised his fist or made any type of physical gesture toward him). Therefore, this Court recommends dismissal of Plaintiff's § 1983 claims against Deputy Marshall.

### ii. Count VI

Count VI of Plaintiff's Complaint is entitled "Assault and Intentional Infliction of Emotional Distress Against Defendant J. Marshall." (Compl. 22.) Both assault and intentional infliction of emotional distress are state-law claims.

---

[8] Specifically, during the portion of the Complaint that discusses Plaintiff's interview with Lt. Sichko, Plaintiff alleges: "Lt. Sichko said that Deputy Marshall had stated that Hahn had been told he violated the rules on April 24 by bringing a Bible to court and that was why he pushed Hahn against the wall and he told Hahn the rules at that time." (Compl. ¶ 56.)

As explained above, 28 U.S.C. § 1367 provides that a court may "decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (quotations omitted). As explained throughout this Report and Recommendation, this Court has found no violation of Plaintiff's constitutional rights under federal law, and recommends that all claims against all Defendants be dismissed as to those federal claims. As a consequence, this Court further recommends that the District Court decline to exercise supplemental jurisdiction over the Plaintiff's purely state-law claims and recommends dismissing these claims without prejudice so that they may be heard by a Minnesota state court.

### C. Defendant Hennepin County

#### i. Count III

Count III of Plaintiff's Complaint is entitled "Denial of Meaningful Access to the Courts Against Defendant County of Hennepin." (Compl. 18.) Plaintiff alleges—albeit conclusory and his only allegation in support of this claim—that he has "repeatedly requested access to a law library and repeatedly been denied such access." (Compl. ¶ 85.)

Meaningful access to the courts is a fundamental constitutional right. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law[.]" *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) (quotation omitted). The prisoner must prove that the state's action "resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Id.* (quotation omitted).

Here, Plaintiff has not alleged that Hennepin County (or anyone else) hindered any of his claims, whether in state or federal court. Plaintiff has not alleged what Hennepin County's actions were that provide the basis for this claim, nor has Plaintiff alleged what injury has been caused to him. Further, there are no facts alleged that support that Plaintiff was being denied access to a law library other than Plaintiff's conclusory statement stating so.[9] Therefore, this Court recommends that Count III be dismissed.

---

[9] Further, if Plaintiff's claim is based on the denial of access to a law library during the pendency of his state-court case (for which the remainder of his claims relate to), then his claim fails because the legal obligation to provide access to the courts is satisfied when a prisoner has been offered or provided a lawyer. *See Kane v. Garcie Espitia*, 546 U.S. 9, 10 (2005) (stating that the petitioner who elected to proceed *pro se* on state court charges did not have a clearly established right under federal law to access a law library while he was in jail before trial); *Schrier v. Halford*, 60 F.3d 1309, 1313-1314 (8th Cir. 1995) (stating that the appointment of counsel relieved the state from having to provide access to a law library or its equivalent). Here, Plaintiff was represented by Bauer until

(Footnote Continued on Following Page)

### ii.    Count VII

Plaintiff titles Count VII "Failure to Train Against City of Minneapolis and County of Hennepin." (Comp. 23.) Plaintiff apparently is trying to hold Hennepin County liable for Deputy Marshall's alleged conduct based on a failure-to-train-or-supervise theory.

Under *Monell v. Dep't of Soc. Servs.*, a municipality or local governmental unit may be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its officials or employees if those acts are taken pursuant to an unconstitutional policy or custom. 436 U.S. 658, 694 (1978); *see also Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). However, "[b]efore a municipality can be held liable . . . there must be an unconstitutional act by a municipal employee." *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 583 (8th Cir. 2006) (quotations omitted); *see also Avalos v. City of Glenwood*, 382 F.3d 792, 802 (8th Cir. 2004) ("For there to be section 1983 liability, 'there must first be a violation of the plaintiff's constitutional rights[.]'") (quoting *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001)). In addition, in order to prove a failure-to-train claim, a plaintiff must (1) establish that policymakers acted with deliberate indifference in failing to train employees; (2) identify a specific deficiency in the training program; and (3) establish that the deficiency is so "closely related to the

_____

(Footnote Continued from Previous Page)
April 24, 2009, when Bauer was allowed to withdraw, and thereafter, on April 29, 2009, the district court appointed the Pubic Defender to represent him.

ultimate injury" that it "actually caused" the constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Inferences of inadequate training and causation must be based on more than the mere fact that the alleged constitutional violation occurred in the first place. *See id.* at 392 ("[W]hile claims such as respondent's—alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation she suffered—are cognizable under § 1983, they can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants.")

Plaintiff asserts that he needs discovery in order to fully develop his failure-to-train claim. Plaintiff, however, fails to address the fact that his Complaint as pleaded is woefully deficient. Even before discovery commences, a plaintiff must state facts sufficient to support a claim in his complaint. Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 545. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Here, Plaintiff alleges no facts in his Complaint that would support that Deputy Marshall's alleged acts were taken pursuant to a Hennepin County unconstitutional policy or custom, or that Deputy Marshall acted the way he did because of a lack of training. Moreover, as explained above, Deputy Marshall's alleged acts, being only verbal threats without more, were not unconstitutional. Therefore, Plaintiff's claim asserted against Hennepin County in Count VII of the Complaint should be dismissed.

## V. Defendant Judge Wernick's Motion to Dismiss

Count IV of Plaintiff's Complaint is entitled "Denial of the Assistance of Counsel Against Defendant Mark S. Wernick," and is based on Judge Wernick's alleged denial of assistance of counsel to Plaintiff. (Compl. ¶¶ 86-89.) Plaintiff indicates that he is suing Judge Wernick in his official and individual capacities. For relief, Plaintiff seeks damages and a declaration that Judge Wernick's actions violated his rights. (Compl. 24.) Defendant Judge Wernick seeks an order of dismissal on the grounds that (1) the Court lacks subject-matter jurisdiction; (2) Plaintiff fails to state a claim upon which relief can be granted; and (3) the *Younger* abstention applies.

### A. Claim for Damages – Subject-Matter Jurisdiction

#### i. Official Capacity – Barred by the Eleventh Amendment

The Eleventh Amendment bars private parties from suing an unconsenting state in federal court unless Congress has unequivocally abrogated the state's constitutional sovereign immunity. *Atascadero State Hosp. v. Scanlon*, 473 U.S.

234, 238-40 (1985). This proscription applies to damages claims against state officials in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (stating that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "[a]s such, it is no different from a suit against the State itself"). A state district court judge, such as Judge Wernick, is a state official in the Minnesota judicial branch. *See* Minn. Const. art. VI; Minn. Stat. ch. 484 (2008).

Here, because the State of Minnesota has not waived Eleventh Amendment immunity from official-capacity damages claims in federal court for alleged violations of the federal constitution, or for violations based on civil rights statutes, this Court lacks subject-matter jurisdiction over Plaintiff's damages claim against Judge Wernick in his official capacity. *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985) (stating that the state's waiver of sovereign immunity from tort actions in state court is not a waiver of the Eleventh Amendment immunity from damages claims in federal court for alleged federal constitutional violations); *Quern v. Jordan*, 440 U.S. 332, 338-45 (1979) (holding that Congress did not abrogate the states' Eleventh Amendment immunity in enacting § 1983); *Beach v. Minn.*, No. 03-862 (MJD/JGL), 2003 WL 21488679, at *3 (D. Minn. June 25, 2003) (same as to § 1985).

### ii.    Individual Capacity – Barred by Judicial Immunity

Judges are immune from damages claims based on their judicial acts. *Stump v. Sparkman*, 435 U.S. 349, 360 (1978).  Judicial immunity "applies even when the judge is accused of acting maliciously and corruptly[,]" *Pierson v. Ray*, 386 U.S. 547, 554 (1967), and also when faced with allegations of conspiracy. *See Moses v. Parwatikar*, 813 F.2d 891, 892-93 (8th Cir. 1987); *see also Mireles v. Waco*, 502 U.S. 9, 11 (stating that "judicial immunity is not overcome by allegations of bad faith or malice").

Here, Plaintiff's claim against Judge Wernick is based on Judge Wernick's statement at the April 15, 2009 hearing: "If you don't want Mr. Bauer to try your case on July 27th, you will be trying it yourself."  (Compl. ¶ 10.)  This statement was made during an inquiry by Judge Wernick as to whether Plaintiff would be retaining new counsel or whether he would be proceeding *pro se*,[10] and therefore was a statement made while performing a judicial act.  *See Stump*, 435 U.S. at 362 ("[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a

---

[10]    After Judge Wernick made the statement that Plaintiff now relies on, Judge Wernick made the following inquiry of Plaintiff:

> . . . I don't know what grounds you're alleging, so let's assume I'm not going to dismiss your case.  Are you going with Mr. Bauer?  Are you going to hire another lawyer? Do you want to go on your own?

(Beitz Aff. ¶ 5, Ex. A at 6.)  Plaintiff then responded, "I will investigate another lawyer."  (*Id.*)

judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."); *see also Edlund v. Montgomery*, 355 F. Supp. 2d 987, 990 (D. Minn. 2005) (same).  Further, Plaintiff has pleaded no facts that would support a finding that Judge Wernick's acts fall within an exception to judicial immunity.  *See Stump*, 435 U.S. at 356-60 (stating the exception to judicial immunity for actions taken in the "clear absence of all jurisdiction").  Therefore, judicial immunity bars Plaintiff's damages claim asserted against Judge Wernick in his individual capacity.

### B.  Claim for Declaratory Relief - *Younger* abstention

Judge Wernick moves to dismiss Plaintiff's claims for declaratory relief based on the abstention doctrine in *Younger v. Harris*, 401 U.S. 37 (1971). "Abstention is proper if there is an ongoing state judicial proceeding, the proceeding implicates important state interests, there is an adequate opportunity in the state proceedings to raise constitutional challenges, and in the absence of 'bad faith, harassment, or other exceptional circumstances.'" *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 602 (8th Cir. 1999) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). The "exception[s] must be construed narrowly and only invoked in 'extraordinary circumstances.'" *Aaron v. Target Corp.*, 357 F.3d 768, 778 (8th Cir. 2004) (quoting *Younger*, 401 U.S. at 53-54).  Where there are ongoing state judicial or administrative proceedings, there is a strong policy against the exercise of federal jurisdiction.  *See Younger*, 401 U.S. at 43-44 (discussing the long history

of permitting "state courts to try cases free from interference by federal courts" and the "sensitivity to the legitimate interests of both State and National Governments" in the nation's concept of federalism).

Here, there is an ongoing judicial proceeding in state court. A jury trial was held on November 13 – 19, 2009, and a guilty verdict was returned on November 19, 2009. Plaintiff's Sentencing Hearing has yet to occur; it is scheduled to take place on January 28, 2010. Therefore, Plaintiff's time for appeal has not yet expired. Pursuant to Minnesota Rule of Criminal Procedure 28.02, subd. 4(3), the time for appeal from final judgment in a felony case is 90 days after final judgment. The time for appeal begins to run "when the district court enters a judgment of conviction and imposes or stays a sentence." Minn. Stat. § 28.02, subd. 2(1). Thus, the first *Younger*-doctrine factor is met. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607-11 (1975) (holding that the *Younger* abstention applied to prevent federal court intervention in a state judicial proceeding in which a losing litigant had not exhausted his state appellate remedies).

The second factor is also satisfied, as it is well established that "criminal proceedings implicate state interests of the highest order[.]" *Ronwin v. Dunham*, 818 F.2d 675, 678 (8th Cir. 1987). Here, Plaintiff is currently involved in a criminal proceeding in Minnesota state court, which implicates important state interests – namely, prohibiting criminal sexual conduct.

Therefore, the only remaining issue is whether Plaintiff will be afforded a full and fair opportunity to raise his constitutional claims in state court. Although

32

this Court has been unable to locate any decision from a Minnesota state court that specifically addresses the "constitutional" claim that Plaintiff asserts here against Judge Wernick, this Court has no reason to doubt that the Plaintiff will be able to assert any proper federal constitutional challenges, if there in fact are any, in the state court criminal proceedings, as well as in any subsequent appeal. *See Norwood v. Dickey*, 409 F.3d 901, 904 (8th Cir. 2005) ("We will not engage any presumption that the state courts will not safeguard federal constitutional rights.") (quotations omitted).  Plaintiff may believe that he will be unable to enforce his constitutional rights in state court because of the fact that his claim is based on a statement made by the presiding judge.  But state-court judges are bound by the federal Constitution.  State courts manage and try state cases, and where constitutional issues arise, state-court judges handle them subject to United States Supreme Court review.  *See Kugler v. Helfant*, 421 U.S. 117, 126-28 (1975).  Accordingly, this Court concludes that the third factor for *Younger* abstention has been satisfied.

Regarding the *Younger* abstention exceptions, Plaintiff has not pleaded any facts that would support that "bad faith, harassment, or some other extraordinary circumstance . . . would make abstention inappropriate."  *Middlesex County Ethics Comm.*, 457 U.S. at 435.  Yet Plaintiff makes the following conclusory statement in his response to Judge Wernick's motion to dismiss: "That Judge Wernick is biased in favor of budget protection on behalf of the State should be self-evident from the pleadings."  (Doc. No. 42, Mem. of Law in Supp.

of Mot. in Opp'n to Dismissal of Judge Wernick 2.)  Plaintiff's pleadings, however, do not state facts that support this statement.  In fact, ultimately, a judge appointed a Public Defender for Plaintiff after attorney Bauer withdrew from the case.  Therefore, following *Younger*, this Court concludes that the District Court should abstain from exercising jurisdiction over Plaintiff's claim against Judge Wernick for declaratory relief.  This Court recommends that Plaintiff's claim against Judge Wernick as stated in Count IV should be dismissed without prejudice; Plaintiff is not precluded from raising this particular constitutional challenge in his state-court proceedings.

## VI.  Claims Asserted Under 42 U.S.C. § 1985

In addition to § 1983, Plaintiff asserts that this Court has jurisdiction pursuant to 42 U.S.C. § 1985(2).  Section 1985 states in pertinent part:

> . . . if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2).  To establish a violation under § 1985, a plaintiff must prove that a civil conspiracy existed, that its purpose was to deprive him of his civil rights, and that a conspirator did an act in furtherance of that purpose. Speculation and conjecture are not enough.  *Mettler*, 165 F.3d at 1206.  To withstand a motion to dismiss, "allegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a meeting of the minds."

*Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985) (per curiam) (quotations omitted).

Outside of quoting to the statute, Plaintiff mentions the word "conspiracy" only once in his Complaint when, in his Statement of the Case, he asserts that "Plaintiff is the victim of a civil rights conspiracy engaged in by the Defendants in order to deprive him of equal protection of the laws, the assistance of counsel, and due process." (Compl. 1.) However, Plaintiff's Complaint contains no facts supporting a conspiracy; he alleges no facts suggesting who the specific conspirators were or what they did in relation to the conspiracy, and he alleges no facts supporting that there was any sort of agreement to deprive him of his constitutional rights. Therefore, any purported claim asserted under § 1985 should be dismissed.[11]

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Defendant the City's Motion to Dismiss Pursuant to Rule 12(b)(4)(5) and (6) (Doc. No. 4), be **GRANTED**, and all claims asserted against the City be **DISMISSED WITH PREJUDICE**;

---

[11]     Plaintiff also asserts that this Court has jurisdiction under 28 U.S.C. § 1343(1), (2), and (3), 28 U.S.C. §§ 2201, 2202, and Fed. R. Civ. P. 6(a). However, similar to above, Plaintiff has not pleaded any facts that would state a claim under any of those provisions.

2.      Defendant Thomas E. Bauer's Motion to Dismiss (Doc. No. 9), be **GRANTED**, and all claims asserted against Bauer be **DISMISSED WITHOUT PREJUDICE**;

3.      The Hennepin County Defendants' Motion to Dismiss (Doc. No. 15), be **GRANTED**, and all claims asserted against the Hennepin County Defendants be **DISMISSED WITH PREJUDICE,** except for Count VI against Defendant Marshall, which should be **DISMISSED WITHOUT PREJUDICE**;

4.      Defendant Mark S. Wernick's Motion to Dismiss (Doc. No. 32), be **GRANTED**, and all claims for damages asserted against Judge Wernick in his individual capacity be **DISMISSED WITH PREJUDICE**, and all claims for declaratory relief and for damages asserted against Judge Wernick in his official capacity be **DISMISSED WITHOUT PREJUDICE**;

5.      This action be terminated and judgment be entered accordingly.


Date: January 8, 2010

 *s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge


Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 22, 2010,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This

Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.